Case: 1:22–mj–00236
Assigned To : Magistrate Judge Upadhyaya, Moxila A.
Assign. Date : 11/1/2022
Description: Complaint w/ Arrest Warrant

## AFFIDAVIT IN SUPPORT OF A CRIMNINAL COMPLAINT AND ARREST WARRANT

This affidavit is submitted by Special Agent Zachary Harrison in support of a complaint and application for an arrest warrant relating to:

EMANUEL SALOMON, also known as "Mano" and "Manno" (hereinafter SALOMON), is a Haitian citizen who is believed to reside outside of Port-au-Prince, Haiti.

I respectfully submit that there is probable cause to believe that, between January 12, 2021, and January 23, 2021, SALOMON has committed the following criminal offenses in violation of United States law:

18 U.S.C. § 1203(a) (Conspiracy to Commit Hostage Taking and Hostage Taking).

## AGENT BACKGROUND

1.      I am a Special Agent with the Diplomatic Security Service (DSS), currently assigned as a Task Force Officer to the International Violent Crimes Squad of the FBI's Miami Division. My duties involve investigating various violations of federal offenses, including, extortion, kidnappings, assaults against protected persons, and other violations of federal law. I have been a DSS Special Agent since October 2011 and have been assigned to FBI Miami Division since July 2019. Before my assignment to the Miami Division, I worked as a Special Agent in the U.S. Embassies in Tbilisi, Georgia, Santo Domingo, Dominican Republic, and Tripoli, Libya. Domestically, I was assigned to Los Angeles, CA, where I investigated fraud.

2.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Titles 8, 18, 19, 21, 22, and 31 of the United States Code.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction and venue to issue the requested warrant. Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As described herein, the criminal offenses under investigation began or were committed out of the jurisdiction of any particular State or district, no offender has been arrested in or first brought to a district in the United States for these criminal offenses, and no offender is known to have, or have had, residence within any district in the United States.  See 18 U.S.C. § 3238.

**FACTS ESTABLISHING PROBABLE CAUSE**

5.      On or about December 26, 2020, E.L.J., a U.S. citizen, traveled to Port-au-Prince, Haiti.

6.      E.L.J. reported the following facts to the FBI. On January 12, 2021, while driving on Martin Luther King Blvd. in Port-au-Prince, E.L.J. pulled over his car to the side of the road. While stopped there, a car pulled in front of E.L.J.'s car, blocking him from returning to the road. Four men, armed with long guns and pistols, exited the blocking vehicle and approached E.L.J.'s car. The hostage takers forced E.L.J. into the back seat of his own car. The hostage takers placed a face covering on E.L.J. and drove the car away. The hostage takers drove E.L.J. for approximately 15 minutes, during which time E.L.J. felt the end of a pistol placed against his head.

7.      When the car stopped, E.L.J. was removed and taken to an inside location. When E.L.J.'s mask was removed, he was confronted by the four original hostage takers and two additional men. The hostage takers took E.L.J.'s two cellular phones and forced E.L.J. to provide the codes to unlock them.

8.      E.L.J. was kept hostage at this location for approximately 11 days. E.L.J. stated that he was held against his will and not free to leave. E.L.J. was threatened and beaten by the hostage takers during this time.

9.      During his captivity, E.L.J. was left alone one night and managed to climb to the roof of the building where he was being held. According to E.L.J., he was able to identify various landmarks in all directions, which confirmed to him that he was in the middle of Village de Dieu. E.L.J. was raised in a community nearby Village de Dieu and was well acquainted with the area.

10.     The hostage takers provided E.L.J. with his phone in the morning and evening, and instructed E.L.J. to call contacts in the United States to raise ransom money. The hostage takers

told E.L.J. that they were instructed to kidnap him by individuals who knew he had money in the United States.

11.     According to E.L.J., E.L.J.'s family and friends raised money for ransom. Specifically, E.L.J. stated that approximately $3,900 was raised in the United States for a ransom payment.

12.     Business records of Western Union and Money Gram confirm that J.D., a relative of E.L.J., received a total of $3,996.50 between on or about January 18, 2021, and on or about January 21, 2021, from individuals in the United States.

13.     According to J.D., who was interviewed by the FBI, on or about January 21, 2021, J.D. and S.L., a friend of E.L.J., obtained the ransom payment and went to a meeting point in Village de Dieu, as instructed by the hostage takers who had called J.D. by phone. S.L. was also interviewed by the FBI, and likewise recalled dropping the ransom payment at a location in Village de Dieu.

14.     On or about January 22, 2021, the hostage takers told E.L.J. that they were planning to release him. They placed a mask on E.L.J. and put him on the floor of the back of an SUV, and held him at gun point. After driving approximately five minutes away, E.L.J. heard the hostage takers comment that there was a police roadblock on a road in the village and so the release was called off.

15.     On or about January 23, 2021, the hostage takers released E.L.J.. After dark, one of the hostage takers took E.L.J. on the back of a motorcycle to St. Bernadette Church, which is located on Highway 2, southwest of Port-au-Prince. E.L.J. recognized the area that he was dropped off in as being a five-minute drive from the area known as Village de Dieu.

16.     The hostage takers kept E.L.J.'s car and two cellular phones.

17.     Following his release, E.L.J. met with the FBI, and identified SALOMON, known to E.L.J. as "Manno," as the leader of the hostage takers:

a.  E.L.J. stated that he knew SALOMON's identity because SALOMON is well-known in Haiti as the leader of Village de Dieu. Prior to his kidnapping, E.L.J. had seen SALOMON on social media in videos with another leader of Village de Dieu.

b.  During his kidnapping E.L.J. saw SALOMON on two different occasions. On the first occasion, SALOMON was behind a sheet and told E.L.J. that he was the leader of another gang, but E.L.J. did not believe him because E.L.J. knew that he was not in that gang's territory. On the second occasion, E.L.J. spoke with SALOMON for approximately 15 minutes from a few feet away. E.L.J. was able to see SALOMON's face fully uncovered during this time and heard SALOMON direct the other hostage takers to stop beating E.L.J.

c.  E.L.J. heard SALOMON referred to by the other hostage takers by the name "Leta," which means leader in Haitian Creole.

d.  Following his release, on or about January 23, 2021, E.L.J. was interviewed by FBI agents. E.L.J. identified SALOMON by name as "Manno." According to the interviewing FBI agent, E.L.J. did not identify a photo of SALOMON in a photo book shown to him at that interview, although your affiant notes that the photo of SALOMON presented on that day was of low quality and taken from a side profile. (Your affiant also notes that, in a subsequent interview in October 2022, E.L.J. stated that he recalled seeing and identifying a photograph of "Manno" during this interview.)

e.  Additionally, in a subsequent interview with law enforcement on or about May 18,

5

2021, E.L.J. stated that he had seen videos of "Manno" on social media, and although "Manno's" face was partially covered in the social media video, he recognized "Manno" as one of his hostage takers on the basis of his voice, mannerisms, and build. On or about October 31, 2022, E.L.J. identified for the FBI a social media video of "Manno" that he had reviewed (Video-1).

f.   In a further interview with the FBI on or about October 31, 2022, E.L.J. was shown a photo book of six photographs, which included a social media profile photograph used by an account associated with a number belonging to SALOMON.[1] E.L.J. identified SALOMON as "Manno" from among the individuals contained in the photo book.

18.   I have reviewed social media postings on YouTube that purport to relate to the Haitian gang, Village de Dieu, and which corroborate that SOLOMON is in fact a leader of the gang Village de Dieu. Relevant here:

a.   I have reviewed Video-1, which is a social media video by a Haitian news channel posting an interview with "Manno" on December 6, 2020. In the video, a masked individual claiming to be "Manno," the leader of the gang Village de Dieu, discusses the gang's kidnapping of the wife of a Haitian police official. "Manno" was repeatedly called that name by the reporter and further stated at the end of the video that he was in fact "Manno" under the mask. Your affiant notes that "Manno's" face is partially visible when he moves his head in this video.

---

[1]   The FBI obtained the photograph from a confidential human source ("CHS-1") in Haiti, who is able to obtain information from a Haitian cell phone provider. CHS-1 has provided information in the past in this and other investigations that has been independently corroborated by other sources. CHS-1 has been paid by the FBI.

b.  I have reviewed Video-2, which is a social media video by a Haitian news channel

posting an interview with "Manno" and "Izo" on April 20, 2020. In the video, two

individuals are identified by the reporter as "Manno" and "Izo," leaders of Village

de Dieu, and the posting likewise includes those names. While the individuals are

masked, the masks cover only half of their faces and their eyes are clearly visible.

The interview was about a recent announcement by the Haitian Minister of Justice,

who gave the Village de Dieu gang an ultimatum to leave their territory. In the

interview, "Manno" refers to the other person in the video by the name "Izo."

19.    CHS-2, a confidential human source whose information has been corroborated by

other witnesses and evidence,[2] has provided the FBI with information about the gang situation in

Haiti. CHS-2 formerly held political office in Haiti, and is familiar with the Haitian gangs from

that position. CHS-2 reported that, in general, gangs in Haiti operate in distinct locations, or

territories, and that the gangs battle with police and each other to exercise control over their

territory. According to CHS-2, the gang known as Village de Dieu operates in and around the

neighborhood of Village de Dieu, which is southwest of Port-au-Prince. According to CHS-2, St.

Bernadette Church is located in the neighborhood next to Village de Dieu. CHS-2 also identified

"Izzo" as the leader of Village de Dieu and "Manno" as the second-in-command of Village de

Dieu. CHS-2 stated that "Manno" was very active on social media in his capacity as a leader of

the gang.

---

[2] CHS-2 has been paid for information provided to the FBI related to various criminal
investigations in Haiti.

## REQUEST TO SUBMIT WARRANT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

20.     I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for an Arrest Warrant. I submit that Assistant U.S. Attorney Karen P. Seifert, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

## CONCLUSION

21.     Based on the forgoing, I submit that there is probable cause that SALOMON and his coconspirators have violated 18 U.S.C. § 1203(a) (Conspiracy to Commit Hostage Taking and Hostage Taking).

Respectfully submitted,

Zachary Harrison
Special Agent
Diplomatic Security Service

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on **November 2, 2022**

MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE

8